Mr. Frasher. Good morning, your honors. The appellants will be focusing on three issues today. The first issue is the local rule 56-1B of the Southern District of Indiana. The second issue will be Chase's qualified written response and the third issue will be discussing damages and causation. The Southern District of Indiana requires pursuant to 56-1 that the briefing during the SJ stages requires a label of a statement of material facts of dispute. Here the district court ruled that the lack of that label required the case to be dismissed because the appellants did not follow that procedure. The Seventh Circuit here stated in Packer that the district court is entitled to a roadmap. It's the position of the appellants that a roadmap was There's a label that says a jury could reasonably conclude that Chase violated 12 U.S.C. 2605 where Chase, colon, and it drops down to list 10 disputed facts in bold print. Each of these facts are later analyzed with case law, legal analysis, and it has specific citation to the record. The district's court reasoning is form over function. If you were to swap the label and put into the brief of the appellants that the statement material facts in dispute in place of the label, the one that the appellants used, the brief would be identical except for the label that was used in the brief. It's also common knowledge that cases should be heard on the merits, not dismissed because of the technicality of The appellant was substantially compliant with that local rule as the district court was able to discern from the briefing the facts that were disputed. This is a cross motion for summary judgment. The issues were framed by both parties and we believe as the appellant the district court abused discretion by dismissing a case three years in the litigation over the technicality of the lack of compliance with the local rule. The next issue is the response to the qualified written request by Chase. Under RESPA, a servicer must do one of three things. They must correct the account, they must provide a written explanation of why the account is correct, or they must provide the requested information or explain why it's not available. To frame this issue and discuss it, I want to provide a hypothetical to better explain it on the day-to-day basis. Say for example, my wife and I go out to our favorite restaurant at St. Elmo's Steakhouse in Indianapolis. We have a couple appetizers, we have some entrees, we have some wine, some dessert. At the end of that meal, the server brings over the bill. I look at the bill and there's an issue with the bill. I believe there's a mistake in that bill. So I call the server over to the table, I give the bill to the server, the server goes away for a few moments, the server comes back to the table and places in front of me the exact same bill. Nothing more, nothing less. I can't discern from looking at that identical bill whether the bill is correct or whether there's a mistake on it. Here, Chase provided two documents in its response to the first qualified written request. The documents included the loan history and the escrow account. These are documents that the consumer, the borrowers here, the appellants, already had or had easy access to. Well, why would the fact that there was surplus in the escrow account prevent Chase from for several months leading up to December 2010? Judge, there was a $29 underpayment. The reason for underpayment is because from 2009-2010, the borrowers did not update their automatic withdrawal from the account. If the borrowers did pay that difference of $29 for the 12 months, there would have been a larger overage. They still, at the end of 2010, received a $250 overage. So if they paid that $29, take that times 12, mathematically, that would have been an additional overage. That issue of underpayment has nothing to do with liability under arrest. Well, is it the plaintiff's position that they would have started making their mortgage payments immediately after learning that Chase placed its December 2010 payment in a suspense account because it was less than the amount due? That is not the position of the appellants. The position of the appellant is that as of January 2011, when they found out the December 3rd payment was put into a suspense account, a late fee was triggered on December 16th of 2010. According to the mortgage, the first thing that comes out of a mortgage payment is a late fee. So if they were to pay the January 2011 payment, it would have all gone to our principal. The late fee would have been taken out first. Presumably, there would have been a January late fee. Making more payments to the mortgage doesn't fix the problem. Chase has to go into the system, take the payment that they agreed to accept at $13.99, and apply it toward the principal. The conversation is key here. That conversation was documented in the call log, and as a result of that conversation, the borrowers were told to go to the local Chase Bank branch, make a payment at $13.99. That's what they did. Chase failed to code this system to accept that new correct payment, and therefore, the January payment was not made by automatic withdrawal from the account, because the default of the account terminated the automatic payment process of the withdrawal from the consumer's account. They intended to make the payment, but the automatic system was terminated. They're withholding payments at this time until the issue is figured out. So when Chase argues that it's their problem because they're not making any more payments, that's misrepresenting what would actually happen. Also, the case that's cited by both parties is Bates, the Chase Bank from the 11th Circuit. If a borrower makes a payment and it's insufficient, at times Chase will send the payment back. So again, until the Chase put the payment into the suspense account on December 3rd, either a payment that made today would be sent back to the borrowers or presented to the mortgage, the late fee would be taken out first. Can you talk to speak to the damages? Because what evidence is there in the record that Chase's failure to respond to the plaintiff's qualified written request actually caused the damages they allege? Because they say their marriage failed, there were health issues, closing of a law practice. I mean, I understand that these things happened around the time that the plaintiff were having problems with Chase, but what's the evidence of causation besides the fact that these things happened? According to a case called Morais v. Chase, damages can be as small as the cost of postage, time away from work, dealing with emotional stress in this case. When a is no correct response, the cost of that postage alone is actual damages. And let's keep in mind that the way this case was pled, damages is to be decided by the jury, not the district court. But if the only causal connection is to postage, then you're going to go to jury trial to recover postage? No, Your Honor. What's the evidence link of causation to the other categories of damages that are being claimed? It seems to me that at best you've got an incomplete compliance because your clients didn't get an explanation of the double insurance payment as to which insurance companies got that. That's omitted from the payment history. They got a full payment history, a full account history, and a full history of the status of the escrow account over a period of years. So what was omitted was that one payment went to Allstate, the other payment went to Homesite. But they already knew that, so they can't really claim any damages from that omission. And the other thing they didn't get was a narrative explanation of the adjustment that was made in December 2010 to the loan amount and the reason why Chase put the December payment into a reserve account or this holding pattern essentially, a suspense account, pending a complete payment. So they didn't get that narrative explanation, those two things. So what categories of damages are causally linked and attributable to those two omissions other than the postage for having to send another request? Judge, I'm going to clarify something. First of all, the two homeowners payments in 2009, we will concede that those homeowner issues had nothing to do with liability for RESPA. Anything that occurred previous to December 3rd, 2010 is not relevant to the liability under RESPA. For example, at the time they realized that two homeowners policies were eventually made. Okay, so you're complaining about, your clients are complaining about not getting a complete explanation about the recalculation of the December 2010 payment which was undertaken by Chase for purposes of accounting for the shortfall in the escrow because of the double insurance payment that they did not remit the reimbursement, your clients that is, did not remit the reimbursement to Chase to replenish the account. They didn't get that explanation. Judge, there wasn't a shortfall. The consumers received a no reject in the year. The keystone of the complaint here is why did Chase on May 13, 1999, they did that in January 11. Okay, even if there's a dispute of fact about whether Chase's recalculation was accurate or not, it seems to me that the RESPA violation, which is what we're here on, whether the response of the servicer complied with the duties imposed by RESPA and if information was collected, the categories of damages your clients are claiming from that, they can't claim the damages associated with the foreclosure because the foreclosure had nothing to do with this RESPA dispute. The foreclosure had everything to do with them not paying their bills. So those damages, the emotional distress damages, the financial damages, the loss of the marriage, etc., the loss of time away from the law practice, etc., none of that is causally linked to the RESPA violation. It seems to me that the only thing that you've identified as causally linked to the RESPA violation is postage, or at least that's all I've heard so far. Your Honor, count along the party submitted evidence of emotional stress and the court held that was enough to get past the SJ standard. Okay, but you know we're here on de novo review, right, so you have to convince us that there's some other category of damages other than postage that is attributable to the RESPA violation, not to the foreclosure. The time spent preparing the qualified written request. And how much is that? Time away from work. How much is that? Mr. Perrin spent about $900 of his time. Ms. Jackson in the briefing I believe was... $900 of time in drafting the second request? His hourly rate at the time was $100 an hour. Ms. Jackson's... Took nine hours to draft that second request? Looking at the documents, the loan documents and analyzing them, where his time added up from that. Okay, so you're going to limit your damages. Ms. Jackson also had time in investigating the case, drafting the qualified written request. Okay, how much is that? I believe there's about $3,600. The biggest issue here is this financial crisis caused problem with their marriage. They were married for 25 years. Yeah, but that's attributable to the foreclosure. That's not attributable to the RESPA violation. There's no question that the foreclosure was fully That's not the record. Well, they were construed to be in default, right? And but the default was by virtue of non-payment of the mortgage for many, many months. And you can't claim those damages are causally linked to a RESPA violation. You only get those damages that are, you know, causally linked that occur as a result of the failure to provide complete information. Part of the rules on a RESPA is if there's a mistake, either have a written explanation of why the money was put in suspense or correct the account. Right, and you limit your complete information. All right, I see a minute of time. Thank you. Mm-hmm. Thank you, Mr. Frasher. Mr. Jurkiewicz. Good morning, judges. May it please the Court, I'm David Jurkiewicz here on behalf of JPMorgan Chase Bank. Borrowers have not shown that Chase made any error in the computation of their monthly mortgage payments in the administration or distribution from their escrow account or in the servicing of their loans, and the District Court findings should be affirmed. Here we've got facts that the borrowers ignored their obligations under the loan. They ignored communications sent by Chase before and after January of 2010, and they ignored the local rules on summary judgment. Well, where in Chase's response to plaintiff's first letter did Chase explain why the December 2010 payment was placed in a suspense account? Chase's response contained a detailed payment history that shows how every payment was received and then where it was placed. So there is, there's a sufficient demonstration that that money was not enough to make a mortgage payment and was placed into suspense. It doesn't explain the recalculation. Your Honor, when you say the recalculation, is that referring to their theory that Chase should have taken part of the 250 and escrow overage and applied it? Well, no. The reason why there was a shortfall is because, as I understand it, the escrow account was short because of the failure of the plaintiffs to send the reimbursement check from Allstate to Chase, and that's why the mortgage payment, the total mortgage payment for 2010 was recalculated. Your Honor, that is correct. Excuse me. And then their December payment was short by some small amount. Correct. They chose to underpay the 2010 payments for whatever reason, maybe through lack of diligence, to know that it should have been $1499. But then they make even a second request for information about their account history for the new time period, February 1 through April 27, and there's no explanation there either. It's just the raw numbers. Your Honor, there was no payments made during that period, so there'd be nothing different to account to them for. They ceased payments in December of 2010, so we would have supplied them with the same information. Yeah, but still there was no explanation when they made that second request, as to how that calculation occurred. Correct, Your Honor. The second request, it was duplicative of the first. Any information supplied with the first would have answered the second request, and cases cited in the brief demonstrate that there's no need to send the same information twice. I'd like to talk about the duty of good faith and fair dealing. They raised that Chase breached that. The district court found that such a duty may arise in the escrow administration of a loan. Here, I think the plaintiffs have told this court that they're not pursuing any escrow violations. This all relates to a There's been no demonstration that Chase mishandled the escrow account, so there couldn't be a breach, even if there is a duty. So let's speak to damages. That time spent away from work preparing the requests for information, isn't that sufficient to establish actual damages under RESPA? RESPA requires a demonstration that the damages flow from the violation. Here, any potential violation that the plaintiffs raised would relate to credit reporting in which there's no demonstration of any credit reporting evidence, or to the fact that there was an insufficient explanation. In fact, our December 4, 2011 letter to the debtors, the borrowers, letting them know that there's been a default in payments, sets forth in paragraph 7 that if you tender less than an amount due, Chase may apply that without waiving any default. So even before sending the qualified written request, Chase has explained what would happen to an insufficient payment, such as December's. Chase timely responded to the qualified written request. It acknowledged the qualified written request timely, and provided sufficient information to answer the borrower's concerns. Interestingly, if you look at QWR 1, or the January 10 letter from the borrowers, it says that they dispute the payments set forth in their December 22, 2010 mortgage statement. There is no December 22, 2010 mortgage statement in evidence, so we don't even know what they're disputing if you take the very letter of QWR 1. Then in the next sentences, they reference the 1422 in escrow, and the 1399 in the December payment, but those are more in the framework of a declarative sentence than a concern. Then they outline a request for eight items of information, such as escrow and application of funds, and that was provided to them in Chase's response to the January 10 letter. So Chase timely responded and adequately responded. I'd like to talk to the obligations under the local rules as set forth in footnote 1 of the decision. It's within the court's discretion to take Chase's faxes uncontroverted, where borrowers fail to follow the local rules. Here they did not include a section in their brief, material fax in dispute, and the court clearly had the option to proceed with the faxes designated by Chase's uncontroverted. That is a different standard of review than de novo, that would be abuse of discretion standard, and there's been no demonstration that the district court violated any case law in determining Chase's fax to be undisputed. Unless the judges have any questions, I will conclude this. Seems not. Thank you, counsel. Thank you. Anything further, Mr. Thrasher? Got about 30 seconds. Yes, your honor. I want to come back to the homeowner's issue. That amount of money was recouped in 12 monthly payments over 2010. Again, that has nothing to do with what the appellants are claiming here. As far as damages that we have issued under the briefing, under the Catalan standard, postage is enough, time away from work is enough. In the footnote in the briefing, I note that damage discovery was continuing on after this briefing of the SJ. Damages are for the jury to decide. Under the Catalan standard, the appellant has to provide sufficient support of an award of actual damages to pursue a respite claim. It doesn't say how much or how little. The appellants met the Catalan standard. The case should go to a jury trial to determine damages on the appellants, and the majority of Chase's briefing and the appellant's decision has no relation after December 3rd, 2010. Thank you, your honor. Thank you, counsel. The case is taken under advisement.